IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| EARL KEAN and LINDA KEAN, | : | CIVIL ACTION |
| | : | |
| Plaintiffs, | : | NO. 09-567 |
| | : | |
| v. | : | |
| | : | |
| KENNETH HENRY, CHARLES KRAUS, III, | : | |
| MICHAEL LYONS, SR., GORDON BERLIN, | : | |
| WEST DONEGAL TOWNSHIP, MOUNT JOY | : | |
| TOWNSHIP, and ELIZABETHTOWN BOROUGH, | : | |
| | : | |
| Defendants. | : | |

**MEMORANDUM**

JONES, II, J.                                                                                       February 28, 2012

Plaintiff Earl Kean ("Kean") and his wife Linda Kean (collectively, "Plaintiffs") have brought several claims in an Amended Complaint (Docket No. 27) against Defendants Police Officer Kenneth Henry ("Henry"), Chief of Police Charles Kraus, III ("Kraus"), Police Officer Michael Lyons, Sr. ("Lyons"), Corporal Gordon Berlin ("Berlin"), West Donegal Township ("West Donegal"), Mount Joy Township ("Mount Joy"), and Elizabethtown Borough ("Elizabethtown"). Presently before the Court are the Defendants' various Motions to Dismiss (Dkt. Nos. 28, 32, 33 and 36); Plaintiffs' Omnibus Response (Dkt. No. 37); Elizabethtown's Reply Brief (Dkt. No. 39); and Plaintiffs' Omnibus Sur-Reply Brief (Dkt. No. 44).[1] For the

---

[1] In response to Defendants' motions to dismiss the original complaint (Dkt. Nos. 11, 16, 17 and 22), Plaintiffs sought and received permission from this Court to file a First Amended Complaint (Dkt. Nos. 21 and 23); Plaintiffs then substituted Elizabethtown Borough for the previously named County of Lancaster and removed the Northwest Lancaster County Regional Police Department as a Defendant (Dkt. No. 27). After the Court denied Defendants' initial motions to dismiss without prejudice as moot (Dkt. Nos. 23 and 24), Defendants then filed motions to dismiss Plaintiffs' First Amended Complaint (Dkt. Nos. 28, 32, 33 and 36). In

reasons set forth herein, Defendants' Motions will be granted.

**I.      FACTUAL ALLEGATIONS**

For the purpose of deciding the instant Motions, the Court must take all alleged facts as true. *Phillips v. County of Allegheny*, 515 F.3d 224, 233 (3d Cir. 2008). Plaintiffs make the following factual averments in the Amended Complaint:

In 2002, Kean retired as a Sergeant from the Pennsylvania State Police (¶ 16). In September 2003, as a private resident, Kean attended a West Donegal meeting during which West Donegal proffered a vote to merge the West Donegal and neighboring Mount Joy police departments into a regional authority to be known as the Northwest Regional Lancaster County Police Department ("Regional Police") (¶¶ 18- 19). While West Donegal promoted the merger as an opportunity to improve efficiency as well as preserve Township funds (¶ 20), Kean publicly contended that the true motivation behind the merger proposal was an increase in police officer pay (¶ 22); Kean then moved to postpone any vote on the merger while proposing an interim study as to its potential effects (¶ 21). Kean's motion to postpone was denied and West Donegal voted to approve the merger; Mount Joy subsequently followed suit (¶ 23-24). Thereafter, the West Donegal and Mount Joy police departments were formally merged into the Regional Police (¶ 25).

---

response, Plaintiffs opposed Defendants' renewed dismissal motions, but also requested the Court's leave to further amend their complaint, should the Court find their First Amended Complaint deficient (Dkt. No. 37). The Court granted Plaintiffs leave to amend a second time, and in the interim denied Defendants' motions to dismiss without prejudice as moot (Dkt. No. 47). However, despite this allowance, Plaintiffs failed to file a second amended complaint in accordance with the Court's order, and instead joined Defendants in moving to reinstate the First Amended Complaint and the most recently filed motions to dismiss (Dkt. No. 51). The Court granted said joint motion and now rules upon the sufficiency of Plaintiffs' First Amended Complaint (Dkt. No. 52).

In August 2004, Kean contacted the Regional Police to request its assistance in removing a construction site nuisance; despite repeated calls, no officer responded (¶¶ 28-29). At the advice of the Pennsylvania Department of Transportation, Kean approached the construction site to report the nuisance to the general contractor; however, the general contractor then blocked Kean with his vehicle so that Plaintiff could not exit the construction site (¶¶ 30-31). Kean again contacted the Regional Police for assistance; instead, the Elizabethtown Police Department arrived to remove Kean from the contractor's blockade, but then turned the incident over to the Regional Police for a more formal response (¶ 32). Several days later, Officer Henry responded but took no action on Kean's complaint; the contractor's behavior continued unabated (¶ 33).

At the end of 2006, Kean discovered that the rate of the Regional Police's solved crimes ("clearance rate") had dropped significantly in comparison to the West Donegal Police Department's previous clearance rate (¶ 34). At a West Donegal Township meeting around that time, Kean claimed that the police department merger had failed to result in greater efficiency or saved fund and that, to the contrary, it had inured only to individual police officers' benefits (¶ 35); Officer Henry argued publicly with Kean on this point (¶ 36). After the meeting, Kean memorialized his concerns to the Regional Police Commission, as well as in local newspapers (¶ 37).

On February 7, 2007, while in his police car vehicle without his siren on, Officer Henry followed Kean's vehicle to Elizabethtown, outside Henry's jurisdiction, and stopped Kean (¶ 38). Upon Kean exiting his vehicle but prior to reviewing Kean's identification, Henry yelled, "Earl, get your cards out–Borough will be here in a minute." (¶ 40). Elizabethtown Police Officer Lyons and Corporal Berlin arrived shortly thereafter (¶ 41). Lyons refused to disclose to Kean

the reason for his traffic stop despite Plaintiff's multiple requests; no traffic citation was issued (¶¶ 43, 45).

Kean thereafter complained to the Elizabethtown Chief of Police about the traffic stop, who informed Kean that Officer Henry had wanted, without justification, to charge Kean with fleeing and eluding police officers (¶ 46). The Elizabethtown Police Chief then told Kean "that Elizabethtown will not be used as a weapon for Henry" (¶ 47).

In March 2007, Kean attended a West Donegal Township meeting where a private citizen advised him that the local police officers "will do anything to prevent [Kean] from getting elected to West Donegal Township Supervisor" (¶ 48). Some time after, Kean received a traffic citation in the mail from Officer Lyons citing Plaintiff for careless driving (¶ 49).

In August 2007, an Elizabethtown police officer told Kean that Kean should have anticipated retaliation by police for Kean's public opposition to the department merger, since a defeat of the merger would have prevented increases in police officers' pay, and that there would be "retribution" against Kean as a result (¶¶ 54-55).

## II.     LEGAL STANDARD

In deciding a motion to dismiss pursuant to Rule 12(b)(6), courts must "accept all factual allegations as true, construe the complaint in the light most favorable to the plaintiff, and determine whether, under any reasonable reading of the complaint, the plaintiff may be entitled to relief." *Phillips*, 515 F.3d at 233 (internal quotation and citation omitted). After the Supreme Court's decision in *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007), "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Ashcroft v. Iqbal*, 556 U.S. 662, 129 S. Ct. 1937, 1949, 173 L. Ed. 2d 868 (2009). "A

claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 129 S.Ct. at 1949 (citing *Twombly*, 550 U.S. at 556). This standard, which applies to all civil cases, "asks for more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 129 S.Ct. at 1949; *accord Fowler v. UPMC Shadyside*, 578 F.3d 203, 210-11 (3d Cir. 2009) ( "All civil complaints must contain more than an unadorned, the-defendant-unlawfully-harmed-me accusation.") (internal quotation omitted). Where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not "show [n]"—"that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2); *Iqbal*, 129 S.Ct. at 1950.

### III.   DISCUSSION

Plaintiffs bring three Counts against Defendants.[2] First, Kean claims a violation of 28 U.S.C. § 1983 against West Donegal, Mount Joy and Elizabethtown, as well as individual

---

[2] In addition to West Donegal, Mount Joy, Elizabethtown, Henry, Kraus, Berlin and Lyons, Plaintiffs also list "John Does 1-10" as Defendants in the Amended Complaint's caption. The John Doe Defendants have never been served; typically the Court would thus order Plaintiffs to show cause for their failure to substitute the John Doe Defendants' true identities. *See Washington v. City of Phila.*, No. 11-3275, 2012 WL 85480, at *1 n.2 (E.D. Pa. Jan. 11, 2012) (failure to show good cause would oblige court to dismiss without prejudice plaintiff's claims against John Doe defendants pursuant to Federal Rule 4(m)).

However, here Plaintiffs assert none of their actual claims against any John Doe. Indeed, no John Doe is ever mentioned anywhere in the Amended Complaint other than the caption, even though Plaintiffs were twice offered the opportunity to supplement their original complaint with additional allegations as to the John Doe Defendants and did not do so. Accordingly, all claims against John Does 1-10 will be dismissed with prejudice. *See Grdinich v. Phila. Housing Auth.*, No. 10-4954, 2011 WL 4467658, at *3 & n.10 ("While Plaintiff liberally uses the word 'Defendants' at various times in the Amended Complaint, such blanket, non-specific assertions do not meet muster....Plaintiff fails to aver the individual participation by [a defendant] that is necessary to support even an inference of liability on any Count (i.e., fails to raise the right to relief above a speculative level).").

Defendants Henry, Kraus, Berlin and Lyons in their official capacities, arising under the First, Fourth and 14th Amendments to the U.S. Constitution. Am. Compl. ¶¶ 60-68 (Count I). Second, Kean asserts state law claims against Henry, Kraus, Berlin and Lyons in their individual capacities for (a) intentional infliction of emotional distress; (b) conspiracy/aiding and abetting; (c) malicious prosecution; (d) false imprisonment; and (e) false arrest. Am. Compl. ¶ 69 (Count II). Third, Linda Kean brings a claim for loss of consortium against Henry, Kraus, Berlin and Lyons in their official capacities. Am. Compl. ¶ 69 (Count III). Applying the appropriate legal standards I reach the following conclusions.

    A.    **Federal Claims**

        1.    <u>Defendants Henry, Kraus, Berlin and Lyons</u>

In their respective motions to dismiss, Defendants Henry, Kraus, Berlin and Lyons request that this Court dismiss all Section 1983 claims against them in their official capacities.[3] These individual Defendants contend that to sue them in their official capacities is the equivalent

---

[3] Somewhat perplexingly, Defendants West Donegal, Mount Joy, Henry and Kraus seek dismissal of all claims except for "the First and Fourth Amendment claim against Officer Henry, in his personal capacity." Dkt. No. 32-2 at 5. <u>However, Kean does not raise any constitutional claims against the officer Defendants in their personal (i.e., individual) capacities, only in their official capacities.</u> *See* Am. Compl. §§ 60-68 (federal claims against officers in official capacities); *cf.* Am. Compl. §§ 69-70 (state law claims against officers in individual capacities). Indeed, Henry's motion to dismiss argues that, "[b]ecause official capacity suits are redundant, the alleged civil rights claims brought against Kenneth Henry and Charles Kraus, III, in their official capacities, in Count I of the Plaintiffs' Amended Complaint, must be dismissed as a matter of law." Dkt. No. 32-3 at 18. Regardless, even if Defendant Henry did not move to dismiss Kean's First and Fourth Amendment claims, this Court does so for the reasons set forth above. *See Irene B. v. Phila. Acad. Charter Sch.*, No. 02-1716, 2003 WL 24052009, at *9 (E.D. Pa. Jan. 29, 2003) (dismissing *sua sponte* claims against school administrator in his official capacity as duplicative of his claims against the school); *Basile v. Twp. of Smith*, 752 F. Supp. 2d 643, 662-63 (W.D. Pa. 2010) (dismissing *sua sponte* Section 1983 claim against officer in his official capacity as duplicative of claim against municipality).

of suing their municipal employers. As West Donegal, Mount Joy and Elizabethtown are also named Defendants in this suit, the Court agrees that such official capacity claims are duplicative. *See Irene B. v. Phila. Acad. Charter Sch.*, No. 02-1716, 2003 WL 24052009, at *9 (E.D. Pa. Jan. 29, 2003) ("Since official-capacity suits generally represent only another way of pleading an action against an entity of which the officer is an agent, it is appropriate to dismiss the claims against the individual in his official capacity and retain them against the real party in interest.") (internal quotation omitted); *A.M. v. Luzerne County Juvenile Detention Ctr.*, 372 F.3d 572, 580 (3d Cir. 2004) ("A suit against a governmental official in his or her official capacity is treated as a suit against the governmental entity itself."); *see also Kentucky v. Graham*, 473 U.S. 159, 165-66 (1985) ("As long as the government entity receives notice and an opportunity to respond, an official-capacity suit is, in all respects other than name, to be treated as a suit against the entity.") Accordingly, the Court will dismiss Count I as against Defendants Henry, Kraus, Berlin and Lyons.[4]

      2.    Defendants West Donegal, Mount Joy and Elizabethtown

          a)    *Section 1983 Claims*

As the Section 1983 claims in this action will be dismissed as duplicative against Defendants Henry, Kraus, Berlin and Lyons in their official capacities, those claims would remain only as against West Donegal, Mount Joy and Elizabethtown. Municipal liability,

---

[4]As the Court dismisses the federal claims against Defendants Henry, Kraus, Berlin and Lyons on these duplicative-claims grounds, it need not reach those Defendants' arguments that Kean also failed to state those claims such that relief could be granted in any event. *See* Am. Compl. § 63 (alleging that Henry, Kraus, Berlin and Lyons , in their official capacities, maliciously and selectively prosecuted Plaintiff and denied him due process, in violation of his First, Fourth and 14th Amendment rights).

however, arises under Section 1983 only when a constitutional deprivation results from an official policy or custom. *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 691-94 (1978). Under Monell, a plaintiff shows that a policy existed "when a 'decisionmaker possess[ing] final authority to establish municipal policy with respect to the action' issues an official proclamation, policy, or edict." *Andrews v. City of Phila.*, 895 F.2d 1469, 1480 (3d Cir. 1990) (quoting *Pembaur v. City of Cincinnati*, 475 U.S. 469, 481 (1986))). "Custom, on the other hand, can be proven 'by showing that a given course of conduct, although not specifically endorsed or authorized by law, is so well-settled and permanent as virtually to constitute law.'" *Bielevicz v. Dubinon*, 915 F.2d 845, 850 (3d Cir. 1990) (quoting *Andrews*, 895 F.2d at 1480). Thus "custom may be established by proving knowledge of, and acquiescence to, a practice." *Patterson v. City of Phila.*, No. 08-2140, 2009 WL 1259968, at *10 (E.D. Pa. May 1, 2009) (citing *Fletcher v. O'Donnell*, 867 F.2d 791, 793-94 (3d Cir. 1989).

Whether proving policy or custom, "a plaintiff must show that an official who has the power to make policy is responsible for either the affirmative proclamation of a policy or acquiescence in a well-settled custom." *Bielevicz*, 915 F.2d at 850 (citing *Andrews*, 895 F.2d at 1480). In order to determine who is responsible for making policy, "a court must determine which official has final, unreviewable discretion to make a decision or take an action." *Andrews*, 895 F.2d at 1481.

Beyond proving that an unlawful policy or custom existed, a plaintiff must also demonstrate that "such a policy or custom was the proximate cause of the injuries suffered." Patterson, 2009 WL 1249968 at *10 (citing *Bielevicz*, 915 F.2d at 850). "'A sufficiently close causal link between ... a known but uncorrected custom or usage and a specific violation is

established if occurrence of the specific violation was made reasonably probable by permitted continuation of the custom.'" *Bielevicz*, 915 F.2d at 851 (quoting *Spell v. McDaniel*, 824 F.2d 1380, 1391 (4th Cir. 1987)).

### i. Practice or Custom

Plaintiffs do not cite any unlawful official policy as the source of their injuries.[5] Accordingly, in order to state their claims against West Donegal, Mount Joy and Elizabethtown, Plaintiffs must allege that each Township and/or Borough acted consistently with a municipal practice or custom which caused a deprivation of a constitutional right. In other words, Plaintiffs must aver "that, through its deliberate conduct, the municipality was the 'moving force' behind the injury alleged." *Berg v. County of Allegheny*, 219 F.3d 261, 276 (3d Cir. 2000) (quoting *Board of County Comm'rs of Bryan County v. Brown*, 520 U.S. 397, 404 (1997)). In the "Operative Facts" section of the Amended Complaint, Plaintiffs set forth the following allegations:

- "After the formation of the Regional Police and due to Kean's public opposition to the force, the Regional Police began a pattern, policy, practice and/or custom of refusing to respond to Kean's requests for police assistance and/or harassing Kean." (Am. Comp. ¶ 27);
- "Lyons was acting upon Elizabethtown Borough's custom, practice, and policy in conspiracy with West Donegal Township and Mount Joy Township to harass Kean." (Am. Compl. ¶ 51);
- "The comments of the police officer and state police lieutenant confirmed Kean's suspicion that West Donegal Township, Mount Joy Township, and Elizabeth[town] Borough had enacted a policy, custom and practice to harass Kean in retaliation for Kean's opposition to the merger." (Am. Compl. ¶ 56); and
- "The comments of the police officer and state police lieutenant evidence a policy and/or practice of harassing and retaliation against an individual that offers political opposition." (Am. Compl. ¶ 58).

---

[5]As noted below, the Amended Complaint does reference "policy" in several places, but no actual policy is ever cited. *See* Am. Compl. ¶¶ 27, 51, 56, 58.

In addition, in Count One of the Amended Complaint, Kean contends that West Donegal, Mount Joy and Elizabethtown "developed and maintained policies,[6] practices and customs exhibiting deliberate indifference to the Constitutional right of persons within the geographic and jurisdictional limits of West Donegal Township, Mount Joy Township, and Elizabeth[town] Borough, especially individuals raising contrary political opinions, which caused violations of Plaintiff's constitutional and other rights."  (Am. Compl. ¶ 64).

     Despite employing appropriate vocabulary, Plaintiffs fail to allege any facts from which the Court could conclude that West Donegal, Mount Joy or Elizabethtown condoned or was otherwise responsible for a such a "well-settled and permanent" custom "as virtually to constitute law." *Andrews*, 895 F.2d at 1480.  While Kean may well have been treated poorly–or even in violation of Pennyslvania law–by various officers in their individual capacities, his allegations amount to the following: 1) the Regional Police (allegedly controlled by Mount Joy and West Donegal) failed to timely respond to a request for assistance with regard to Kean's dispute with the general contractor; 2) at a West Donegal meeting Henry got into a verbal argument with Kean; and 3) Henry effected a traffic stop of Kean without probable cause.  The Court cannot extrapolate from this that policymakers of any of the municipalities in question took "official action" so as to create an unlawful policy, practice or custom..

     Furthermore, Kean fails to allege any facts that suggest a municipal decisionmaker's personal knowledge of the unlawful conduct alleged here.  The Amended Complaint simply

---

[6]Again, other than this conclusory language, Plaintiffs suggest no facts in support of their contention that the Townships and Borough upheld policies that resulted in violations of Kean's constitutional rights.

paraphrases § 1983, and "formulaic recitation of the elements of a cause of action will not do." *Phillips*, 515 F.3d at 231 (quoting *Twombly*, 127 S.Ct. at 1964-65). As Kean "does not adequately plead a custom or policy, or a link between the challenged restriction and a municipal decisionmaker, the restriction cannot fairly be said to represent official policy, warranting the imposition of municipal liability." *McTernan v. City of York, PA*, 564 F.2d 636, 659 (3d Cir. 2009) (internal citations omitted) (affirming dismissal of plaintiff's complaint where complaint did not adequately allege conduct by municipal decisionmaker).

Plaintiffs' allegations bear striking resemblance to those in *McTernan*, where the plaintiff set forth the following relevant allegations in his complaint regarding his protests against Planned Parenthood:

> 16. Despite the lack of violence, the City of York, its Mayor and Police Chief, have routinely dispatched police officers to Planned Parenthood at the behest of Planned Parenthood, to serve as private security guards for Planned Parenthood. It is believed, and therefore averred, that Planned Parenthood pays for these police officers and directs their actions.
>
> 33. Continuing through the present, Mr. McTernan and others have been periodically threatened with arrest and have on multiple occasions been told to leave the alley.
>
> 34. Mr. McTernan is chilled, frustrated and deterred in the exercise of his First Amendment activities due to the City's policy of ignoring First Amendment right[s.]
>
> 35. All of the acts of the Defendants and their agents, as alleged herein, were conducted under color and pretense of the statutes, ordinances, regulations, customs, or usages of the City of York or the Commonwealth of Pennsylvania.

*Id.* at 658.

Reviewing the district court's dismissal, the Third Circuit agreed that McTernan's allegations "failed to satisfy the rigorous standards of culpability and causation required for municipal liability." Id. (internal citations omitted):

> Although McTernan maintains that York officers 'periodically' instructed protesters to exit the alley, he does not plead knowledge of such directives by a municipal decisionmaker such as the Mayor or Police Chief. There is no allegation that either the Mayor or the Police Chief were aware of, let alone directed, the restrictions or participated in formulating traffic abatement strategies at the Clinic. Nor do the allegations support, indirectly, such an inference.

*Id.* at 658-59. Like McTernan's, Plaintiffs' Amended Complaint "alleges nothing more than directives issued ad hoc by individual officers, without reference to any formal administrative or policy channels." *Id.* Kean does not allege that any of the individual officers had final policymaking authority for the municipalities, or that such an authority ratified the officer(s) behavior; his allegations are thus deficient. *Id.*

### ii. Failure to Train or Supervise

The Supreme Court recently reaffirmed that a failure to train constitutes a "policy or custom" of inaction under § 1983 only when it amounts to "'deliberate indifference to the rights of persons with whom the [untrained employees] come into contact.'" *Connick v. Thompson*, ––U.S. ––, –– – ––, 131 S. Ct. 1350, 1359–60 (2011) (quoting *City of Canton, Ohio v. Harris*, 489 U.S. 378, 388 (1989)). "A pattern of similar constitutional violations by untrained employees is 'ordinarily necessary' to demonstrate deliberate indifference" for purposes of failure to train, *id.* (quoting *Bryan Cty.*, 520 U.S. at 409), except for the "narrow range of *Canton*'s hypothesized single-incident liability." *Id.* at 1361 (*Canton*, 489 U.S. at 395). To succeed on an allegation of "single-incident" liability, "the unconstitutional consequences of failing to train [must] be so patently obvious that a city could be liable under § 1983 without proof of a pre-existing pattern of violations[.]" *Connick*, 131 S. Ct. at 1361. It would be hard to overstate the narrowness of this "rare" liability category. The Supreme Court in *Connick* pointed

to the limited scope of its single-incident liability hypothetical:

> [A] city ... arms its police force with firearms and deploys the armed officers into the public to capture fleeing felons without training the officers in the constitutional limitation on the use of deadly force. Given the known frequency with which police attempt to arrest fleeing felons and the predictability that an officer lacking specific tools to handle that situation will violate citizens' rights, the Court theorized that a city's decision not to train the officers about constitutional limits on the use of deadly force could reflect the city's deliberate indifference to the highly predictable consequence, namely, violations of constitutional rights.

*Id.*

As with his practice or custom claim, Kean's failure to train claim must fail because he alleges no facts to show deliberate indifference, despite applying the appropriate legal jargon to label it as such:

- "Defendants' [sic] failed to adequately and properly supervise and train in various aspects of law enforcement, criminal prosecution procedure and substance, including, but not limited to, the nature and existence of good cause, the nature and existence of probable cause, protected political speech, and the laws of the United States, Commonwealth of Pennsylvania, and otherwise." (Am. Compl. ¶ 65);
- [West Donegal, Mount Joy and Elizabethtown], with reckless and deliberate indifference, [failed] to properly train, control or supervise these police officers with respect to their power to stop and seize an individual and power to issue citations in accordance with the United States and Pennsylvania Constitutions." (Am Compl. ¶ 66); and
- "The above described acts or omissions by Defendants, [sic] demonstrated a deliberate indifference to the rights of citizens of the County of Lancaster, such as Plaintiff, and were the cause of the violations of Plaintiff's rights as set forth therein." (Am. Compl. ¶ 67).

Kean further fails to plead any fact to suggest a pattern of similar constitutional violations by untrained employees, but merely refers to other aggrieved parties in the most abstract, conclusory terms. He notes that West Donegal, Mount Joy and Elizabethtown "demonstrated a deliberate indifference to the rights of citizens of the County of Lancaster, such as Plaintiff, and were the cause of the violations of Plaintiff's rights as set forth herein." Am. Compl. ¶ 67

13

(emphasis added). Kean omits any reference from which the Court could reasonably conclude that other identifiable individuals have suffered from a "pattern of similar constitutional violations."

Kean also fails to fit his claim into the limited category of single-incident liability reserved in *Canton*. To establish deliberate indifference from a single incident, a plaintiff must show that the municipality's failure to train was clearly going to lead to the constitutional violations alleged. In dismissing the plaintiff's municipal liability claim in *Connick*, the Supreme Court found it "significant" that the "*Canton* hypothetical assumes that the armed police officers have no knowledge at all of the constitutional limits on the use of deadly force." *Connick*, 131 S.Ct. at 1363. This "significant" fact is similarly absent from Kean's complaint here, and further illustrates Kean's failure to state his *Monell* claim so as to survive dismissal at this stage.[7]

**B.     State Law Claims**

As Plaintiffs' Amended Complaint fails to sufficiently allege any federal claim upon which relief can be granted, this Court declines to exercise supplemental jurisdiction over the remaining state claims. *See* 28 U.S.C. § 1367(c)(3) (discretion to decline supplemental jurisdiction when all claims over which court had original jurisdiction have been dismissed). Accordingly, Counts II and III will be dismissed.[8]

---

[7] As the Court dismisses Kean's claims against West Donegal, Mount Joy and Elizabethtown on Monell grounds, it need not reach Elizabethtown's arguments regarding the statute of limitations on Kean's civil rights claims.

[8] As the Court declines to exercise supplemental jurisdiction over the remaining state law claims in this action, it need not reach Defendants' arguments regarding any failure to state a claim upon which relief could be granted, uncognizable nature or lack of standing as they relate

## IV. CONCLUSION

For the reasons set forth above, Counts I, II and III of Plaintiffs' Amended Complaint are hereby dismissed with prejudice, as: (1) Plaintiffs have already been granted the opportunity to amend their Complaint; (2) Plaintiffs have done so, apparently leaving no fact unstated; and (3) further amendment would be futile.  Additionally, this Court declines to exercise supplemental jurisdiction over Plaintiffs' remaining state claims.

An appropriate Order follows.

---

to Counts II and III.

Case 5:09-cv-00567-CDJ   Document 56   Filed 02/28/12   Page 16 of 16